UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RUSSELL J. YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>SUSAN I. BAUR, Cowlitz County Prosecuting Attorney and ANGELA MILLER,<br><br>Defendants. | Case No. C05-5565RBL/KLS<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**OCTOBER 27, 2006** |

This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b) and Local MJR 3 and 4. Plaintiff contends that Defendant Miller brought false charges of theft and forgery against him. Before the court is Defendant Angela Miller's motion to dismiss and for summary judgment on her Counterclaim. (Dkt. # 44). Defendant Miller contends that she is immune from civil liability under RCW 4.24.510 and that she is not a state actor for purposes of 42 U.S.C. § 1983 civil rights liability. This report follows, with the recommendation that the Court dismiss all of Plaintiff's claims against Defendant Miller with prejudice and grant her Counterclaim, with statutory damages, attorney fees and costs.

REPORT AND RECOMMENDATION - 1

## II. FACTS

The following facts are undisputed. Defendant Angela Miller and Plaintiff are first cousins. Margaret Davis was their grandmother. Defendant Miller enjoyed a close relationship with her grandmother and assisted her with finances and other personal matters. (Dkt. # 46, ¶ 4). In late February 2005, Defendant Miller helped Ms. Davis move from her apartment to a nursing home. (Id., ¶ 9).

Ms. Davis also maintained a relationship with the Plaintiff, her grandson, even though she knew of his criminal history and his status as a registered sex offender. She allowed him to have a key to her apartment and to stay with her when he could not find any other place. (Id., ¶ 4).

In late February 2005, Defendant Miller observed Ms. Davis sign two blank checks, one for the rent and one for the telephone bill. (Dkt. # 47, Exh. 1, p. 8; Dkt. 46, ¶ 9). She gave Defendant Miller one check and told her to pay the rent with it. She gave the other check to Plaintiff. Defendant Miller believes she heard Ms. Davis tell Plaintiff to use it to pay the phone bill. (Dkt. # 47, Exh. 1, p. 8; Dkt. 46, ¶ 5). Defendant Miller also observed Ms. Davis give Plaintiff her checkbook and a zippered bag containing approximately $400.00 and instruct him to return them to her apartment. (Dkt. # 46, ¶ 5).

On or about March 13, 2005, Ms. Davis asked Defendant Miller to go to her apartment to try and locate Plaintiff, her checkbook, and the money pouch. (Id., ¶ 6). Defendant Miller went to Ms. Davis' apartment and found the checkbook, a carbon copy of the check that Plaintiff was given to pay the phone bill, and the money bag, which was now empty. (Id., ¶ 7). The carbon copy showed, and Plaintiff later confirmed, that he wrote the check to himself for $400.00. (Dkt. # 47, Exh. 1, p. 2, 17). Also, Defendant Miller observed that Ms. Davis' coin collection was missing. (Dkt. # 46, ¶ 7).

Defendant Miller returned to the nursing home with the carbon copy of the check and the empty zippered bag. (Id., ¶ 8). Upon learning that her money and coins were missing and that the check had been filled out to Plaintiff rather than the phone company, Ms. Davis asked Defendant Miller to call the police. Id. Longview police officer Mauck responded and interviewed Ms. Davis

REPORT AND RECOMMENDATION - 2

and Defendant Miller. (Dkt. # 47, Exh. 1, p. 6, 8, 12). Ms. Davis and Defendant Miller showed him the carbon copy of the check and empty bag and told him what they knew of the situation. (Id.). At the officer's request, Defendant Miller wrote out a statement because Ms. Davis' handwriting was very shaky. ((Id., Exh. 1, p. 13, 15, 16).

Ms. Miller's only other communication or contact with any person related to these events was when she contacted Plaintiff's probation officer to attempt to locate Plaintiff. Defendant Miller understood the officer to tell her that Plaintiff was either in jail or about to be put in jail for an unrelated offense. (Dkt. # 46, ¶ 10). Defendant Miller relayed this information to the police handling the investigation. (Id.).

On or about March 21, 2005, Officer Deisher of the Longview Police Department contacted Plaintiff in the Lewis County Jail, where he was being held for issues unrelated to this case. (Dkt. # 47, Exh. 1, p. 2-3). Following Officer Deisher's interview with Plaintiff, Officer Mauck prepared and signed an "Arrestee Information and Probable Cause Sheet' dated March 29, 2005. (Id. at p. 8-9).

Ms. Davis died on April 8, 2005. (Dkt. # 46, ¶ 11). Upon information and belief, the charges against Plaintiff were subsequently dismissed.

Plaintiff disputes only the total number of checks. Plaintiff states that Defendant Miller should have checked with the bank and the phone company. (Dkt. # 48, p. 4). Plaintiff alleges that there were three checks; Check Number 3617, which was for the rent; Check Number 3618, which was for the phone bill; and Check Number 3619, which was meant for Petitioner. (Id.).

### III. DISCUSSION

**A.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the

REPORT AND RECOMMENDATION - 3

nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

**B.     Analysis**

**(1)     Defendant Miller is Immune From Civil Liability Pursuant to RCW 4.24.510 Because She Communicated A Complaint to a Local Police Authority in Good Faith**

Plaintiff's complaint against Defendant Miller is basically that she communicated to authorities about the alleged theft of Ms. Davis' property without "checking with the bank and phone company."

REPORT AND RECOMMENDATION - 4

((Dkt. # 48, p. 4). RCW 4.24.510 provides immunity from civil liability for good faith communications to law enforcement:

> A person who communicates a complaint or information to any branch or agency of federal, state or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, *is immune from civil liability* for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.

RCW 4.24.510 (emphasis added).

The statute was intended to prevent lawsuits and to protect citizens who wish to report information to law enforcement agencies concerning potential wrongdoing:

> Information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government. The legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending such suits can be severely burdensome. The purpose . . . is to protect individuals who make good faith reports to appropriate government bodies.

RCW 4.24.500.

Plaintiff argues that Defendant Miller should not be immune from civil liability because she was reckless and, had she investigated the matter further, would have found there were three checks involved. However, in her report to the police, Ms. Davis stated that she signed only two checks and that she did not give Plaintiff permission to write a check out to himself. (Dkt. 47, p. 13).

Moreover, even if Defendant Miller was incorrect or negligent in her reporting to the police, she would still be immune from civil liability under RCW 4.24.500. *See* Dang v. Ehredt, 977 P.2d 29 (1999); Gilman v. MacDonald, 875 P.2d 697 (1994) (failure to investigate or act with reasonable grounds for belief in the truth of a statement, without more, is insufficient to establish abuse of a qualified privilege). Accordingly, Defendant Miller's communications to the Longview police are protected under RCW 4.24.510 and Plaintiff's claims against her should be dismissed.

    **2.**    **Plaintiff's Section 1983 Complaint Fails Because Defendant Miller Was Not Acting Under Color of State Law**

REPORT AND RECOMMENDATION - 5

1    A defendant has acted under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)).

In general, private parties do not act under color of state law. Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). A plaintiff may bring a claim against a private party under 42 U.S.C. § 1983 "who 'is a willful participant in joint action with the State or its agents.'" Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."). However, "a bare allegation of such joint action" will not suffice. Id.; see also Radcliffe v. Tainbow Construction Co., 254 F.3d 772, 783-84. Facts showing defendants "acted under color of state law or authority" must be alleged. Degrassi, 207 F.3d at 647 (citation omitted); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (to prove conspiracy between state and private parties under section 1983, plaintiff must show agreement or "meeting of the minds" to violate constitutional rights).

As a private citizen, Defendant Miller was not and could not act under color of state law when she spoke with the Longview police. There are no allegations and no evidence of a conspiracy between Defendant Miller and the Longview Police. Defendant Miller cannot be said to be a state actor because "private conduct, no matter how wrongful, is excluded from the reach of section 1983." Cummings v. Guardianship Services of Seattle, 110 P. 3d 796 (2005).

Accordingly, Defendant Miller cannot be found to be acting under color of state law or be subject to a Section 1983 civil rights complaint.

### 3.    **Defendant Miller Is Entitled to Recover on Her Counterclaim**

Defendant Miller is entitled to an award of statutory damages in the amount of $10,000.00 and

REPORT AND RECOMMENDATION - 6

attorney fees against Plaintiff because his lawsuit violates the immunity of RCW 4.24.510:

> A person prevailing upon the defense provided for in this section *is entitled* to recover expenses and reasonable attorney's fees incurred in establishing the defense and in addition *shall receive* statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

Id. (emphasis added).

It is undisputed that Plaintiff's lawsuit arises out of Defendant Miller's communication to the Longview police regarding the alleged forgery of their grandmother's checks. It is also undisputed that the alleged forgery and theft are matters of concern to law enforcement officials. RCW 4.24.510. There is also no evidence that Defendant Miller acted in bad faith in her communication with the police. Although Plaintiff alleges that Defendant Miller should have investigated the matter further before making the report to the police, the allegation is unsupported. The undisputed evidence establishes that Defendant Miller called the police at her grandmother's request. Defendant Miller reasonably believed Plaintiff was in possession of Ms. Davis' checkbook and cash. Defendant Miller reasonably believed Plaintiff had a key to Ms. Davis' apartment and knew where the coin collection was located. Defendant Miller personally saw that the cash and coin collection were missing when she went to Ms. Davis' apartment. Defendant Miller reasonably believed Ms. Davis did not authorize Plaintiff to write out a check to himself in the amount of $400.00 because she heard Ms. Davis tell him to use the check for the phone bill, which is consistent with Ms. Davis' earlier conduct with Plaintiff. (Whether Ms. Davis actually authorized Plaintiff to write the check is irrelevant to Defendant Miller's good faith). And, Defendant Miller reasonably believed Plaintiff had been accused of and convicted of criminal activity in the past.

The undisputed evidence reflects that Defendant Miller acted in good faith in her report to the Longview Police and she is, therefore, entitled to an award of attorney fees, costs and mandatory statutory damages of $10,000.00 pursuant to RCW 4.24.510.

## IV.  CONCLUSION

For the reasons stated above the court should DISMISS Plaintiff's claims against Defendant

REPORT AND RECOMMENDATION - 7

1  Angela Miller with prejudice and GRANT Defendant Angela Miller's motion for summary judgment on
2  her Counterclaim.  A proposed order accompanies this Report and Recommendation.
3        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,
4  the parties shall have ten (10) days from service of this Report and Recommendation to file written
5  objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those
6  objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time
7  limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 27,**
8  **2006,** as noted in the caption.

10        DATED this 26th  day of September, 2006.

14                         Karen L. Strombom
15                         United States Magistrate Judge

28  REPORT AND RECOMMENDATION - 8